## DAUGHERTY BROS. & CO. *v.* CENTRAL NAT. BANK.

*(Supreme Court of Pennsylvania. American Law Record.)*

EQUITABLE RIGHT OF A BANK. A bank has an equitable right analagous to the doctrine of stoppage *in transitu* over the credit it gives to a borrower (who becomes insolvent) for the proceeds of a note it had discounted for him.

TRUNKEY, J. Whatever may be the rights of a party, whose debt is due and payable, to compel an insolvent debtor to set off a claim against him not due, a party, whose debt is not due, has no equitable claim to have it set off against a debt of his own already due, in the hands of a party who is insolvent. *Spaulding v. Backus*, 122 Mass., 553; *Bradley* v. *Angel*, 3 N. Y., 475; *In re* Commercial Bank Corporation of India and the East, L. R., 1 Ch. App., 538. In the latter case it was said that where there is, on one side, a debt presently due, and on the other a liability which will accrue due at a future day, the debt cannot be set off at law against the liability, nor can it be set off in equity. This is at variance with *Lindsay* v. *Jackson*, 2 Paige, 581, where the defendants, who held notes of the plaintiffs not due, were restrained from negotiating them, to the end that they might be applied as a set off against a debt then due by the defendants to the plaintiffs. But it is ruled in *Bradley* v. *Angel, supra*, that one whose debt is not due, has no equitable right to set off against a debt due to him from an insolvent estate, and the decision in Lindsay against Jackson is confined in its operation to such facts as constitute its base. A bank has no lien on money standing to the credit of one of its depositors for the amount of a note of such depositor, discounted by the bank, but which has not matured. The purpose is that the customer may draw out at pleasure the avails of his discount. A debtor in one sum has no lien upon money in his hands for the payment of an unmatured debt owing to him, and a bank is debtor for the discount which is placed to its depositor's credit. If it could retain the money against the note, the discount would be useless to the borrower. *Jordan* v. *Shoe and Leather Bank*, 74 N. Y., 467; *Fourth National Bank of Chicago* v. *City National Bank of Grand Rapids*, 68 Ill., 398.

The owner of a debt may assign it for value, and give title as against the debtor, though he holds liabilities of the creditor not yet matured at the time he received notice of the assignment. *Jeffryes* v. *Agra and Masterman's Bank*, L. R., 2 Eg., 673.

On the foregoing principles the plaintiffs claim that the judg-ment must be reversed, and so it must, if they apply to the facts of this case. The facts conceded and established by the verdict are as follows: The plaintiffs were bankers at Harrisburg, and had an account with defendant, a bank in Philadelphia. On April 2, 1877, the balance due plaintiffs on that account was $14,399.63, and they owed to defendant $15,000 on a note, the proceeds of which had gone into the account. Prior to said date the parties had agreed to a renewal of the note, and the plaintiffs sent a new one for the same sum, payable May 5, 1877, which defendant re-ceived, and on the 2nd of April, sent the original note by mail to the plaintiffs. April 3d the plaintiffs did not open their bank for business, and were insolvent. The defendant, hearing of this, immediately charged the plaintiffs with the original note, credited them with $85, the discount on the new one, resulting in a bal-ance due defendant, and tendered to the plaintiffs the new note, discount and collaterals. April 2d, the plaintiffs gave to Weir and Hunter three checks amounting to $13,300 which were pre-sented to the defendant and payment refused; but it does not ap-pear they were presented, or that defendant had notice of them, till after the said tender and withdrawal of the credit.

The question is, shall the defendant, having discounted the plaintiffs' note and extended their credit for its amount, and upon learning of their insolvency, before payment to, no notice of any checks or assignments by them, having withdrawn the credit and tendered back the consideration, be compelled to pay the money? If so, it would be against everybody's sense of right. The point is not merely one of set off, whether legal or equitable.

Justice and equity forbid that one man's money shall be ap-plied to the payment of another man's debts. On this is based the right of a vendor to stoppage *in transitu*, which arises solely upon the insolvency of the buyer. Where a vendor has delivered goods out of his possession, into the hands of a carrier for de-livery to the buyer, if he discovers that the buyer is insolvent, he may retake the goods, if he can, before they reach the buyer's possession, and thus avoid having his property applied to paying debts due by the buyer to the other people. It was long a mooted question whether the effect of this remedy of the vendor is a re-scission of the sale, or a restoration of possession of the goods with the rights of an unpaid vendor; but now it seems the better

opinion that the contract is not rescinded. Although this remedy of a vendor, which exists only before actual delivery of the goods into the buyer's possession, cannot be exercised in precisely the same mode by a lender of money or credit, yet for similar cause the lender ought to have as efficient remedy until the money is paid to, or the credit is used by the borrower. The lender's remedy may have the effect of a rescission of the bargain. Goods can be held subject to a lien for the price agreed upon, and, if disposed of for more or less than that, the buyer may have the gain or suffer the loss; but when a borrower has as little right to the money as a buyer has to the goods, it is impracticable to hold and dispose of the money with like result. Nor is there reason for so holding—the value of the goods may increase or diminish, whereby the buyer may be gainer or loser by his contract—the value of money is fixed. Insolvency takes the pith out of the borrower's promise to pay, and if he has not yet received the money he should not take it. He did not get the credit in view of his bankruptcy.

The consideration so failed that the defendant was warranted in tendering it back, and an equity arises as against the legal plaintiffs, which prevents their enforcement of the contract. To permit them to recover after their note, the foundation of their claim, is proved worthless, would be the grossest injustice. The defendant's agreement to take the renewal note was not wittingly made for an empty promise.

Plaintiffs contend that Hunter and Weir are innocent purchasers for value. In what sense? They asked no information before taking the checks; no paper of any kind was given by defendant, showing that the plaintiffs had the right to draw or assign. Before presentment or notice of the checks, the plaintiffs' insolvency was shown by a notorious act, and their right to draw was immediately denied by defendant. A vendor's right of stoppage *in transitu* is defeasible in one way only, and that is, when the goods are represented by a bill of lading, which is in the vendee's possession with the vendor's assent, and is transferred to a third person who in good faith gives value for it. Here, the defendant did nothing to mislead third persons, and the plaintiffs had no writing to assign. The facts reveal no superior equity in the person for whose use action is brought.

We are impelled to the conclusion: *First,* That the defendant had a right to tender back the discounted note and refuse payment to the legal plaintiff; and *second,* That the assignees have no equities superior to the defendant, and there cannot be a recovery for their use. *Judgment affirmed.*

We dissent: Mercur, J., Sterrett, J.